F. W. McGEE, APPELLANT, v. ST. JOSEPH BELT RAILWAY CO., RESPONDENT.—110 S. W. (2d) 389.

Kansas City Court of Appeals. November 27, 1937.

*Randolph & Randolph* and *Nilas Vermillion* for appellant.

*Brown, Douglas & Brown* for respondent.

BLAND, J.—Plaintiff is employed by the defendant as a switchman at its railroad yards in St. Joseph, Missouri. He brought this action upon a contract entered into between the local Lodge of the Brotherhood of Railway Trainmen, of which plaintiff is a member, and the defendant. The particular part of the contract alleged to have been violated relates to plaintiff's rights of seniority. The case comes here as a result of the action of the trial court in sustaining defend-

ant's motion for a judgment upon the pleadings, after the filing, by plaintiff, of his reply.

The contract in question provided that the right of preference of work and promotion should be governed by seniority in the service; that a correct seniority list should be furnished the local chairman every six months and a copy posted in the yard office to which the yardmen should have access at all times; that the yardman oldest in the service should be given preference, if competent, and if considered incompetent he should be advised in writing if a letter was requested; that yardmen should not be suspended or dismissed from service without cause and in case of suspension or dismissal he should be given a hearing; that the agreement should be in effect subject to thirty days' notice by either party of a desire to change or terminate said contract or any part thereof.

On December 15, 1933, plaintiff brought suit against the defendant alleging, among other things, that while said contract was in full force and effect, and in violation of its terms, defendant, on October 10th, 1930, changed and altered the seniority list so that plaintiff's name was wrongfully placed so far down that he was deprived of an opportunity to work in the order to which he was entitled; that if defendant had maintained the seniority list as it should have been maintained plaintiff would have been entitled to work each and every day after October 10, 1930. Plaintiff, in that suit, recovered a verdict and judgment in the sum of $4700, which judgment was affirmed upon appeal to this court. [See McGee v. St. Joseph Belt Ry. Co., 93 S. W. (2d) 1111.]

Subsequently, on July 31, 1936, plaintiff commenced the present action, alleging, in substance, that said contract was still in force and effect, claiming further breaches of it, making similar allegations as contained in his petition in the first suit and asking for damages in the sum of $5,091.96, the amount of earnings that plaintiff lost since the filing of the first suit.

Defendant filed its answer in which it set out the petition, the answer and judgment in the prior suit and pleaded that said judgment was a bar to the present action, and alleging that plaintiff had not been in the employ of the defendant since December 15, 1933 and had performed no service of any kind or character for it since said date.

The reply alleges that the judgment in the prior suit was not a bar to this suit for the reason that the contract was a continuing one, requiring defendant to call plaintiff to work in the order of his seniority each and every day while said contract remained in force and effect; that the damages recovered in the previous suit were not a bar to the recovery of damages in the present action because the previous action was only for damages suffered for failure to call plain-

tiff to work prior to December 15, 1933; that the previous action was not one for a total breach occasioned by the termination of the contract, or for discharge of plaintiff under said contract, but was occasioned by the failure on the part of the defendant to provide the plaintiff the right and opportunity to work in the order of his seniority from and after the 15th day of December, 1933 (or the date of the filing of the first suit.)

Thereupon, defendant filed its motion for judgment upon the pleadings, which, as before stated, the court sustained.

The sole question presented upon this appeal is whether the judgment in the former case bars a recovery in the present one, defendant contending that to permit a recovery in the present action would be violative of the rule against splitting a cause of action. Of course, the rule is well settled that a claim or demand cannot be split up or divided so as to be made the subject of different actions. [1 C. J., p. 1106.] The rule has no application where the demands arising out of a contract are separate and distinct. The law in reference to such matters is well settled but the courts have had great difficulty in determining whether given demands are single or separate and distinct. Of course, where there is an entirely distinct and separate contract the breach of one gives rise to a separate cause of action from one for the breach of the other, but the same contract may give rise to different causes of action either by successive breaches or by reason of the different stipulations or provisions of the contract. [1 C. J., pp. 1111, 1112.]

The rule applicable where an employee has been wrongfully *discharged* seems to the well settled in this state. Where the "servant is unlawfully discharged he may treat the contract as rescinded and sue on a *quantum meruit* for services actually rendered, or he may bring his action for damages for breach of contract. He may wait to do this until the term is ended, and recover his actual damages, or he may sue at once and recover his probable damage from the breach. But when he has elected his remedy and pursued it, a judgment in one action will be a bar to a further suit. A person discharged from services cannot, strictly speaking, recover wages for a constructive service. If he brings such an action and recovers, it must be regarded as an action for the breach of contract in wrongfully discharging him." [Soursin v. Salorgne, 14 Mo. App. 486, 488.] [See, also, Booge v. Pac. R. R. Co., 33 Mo. 212; Hume v. Miller Hatcheries, 51 S. W. (2d) 179.]

However, there is a difference between discharging an employee and retaining his services but preventing him from laboring, such as presented in this case. Where the breach of a contract is equivalent to a termination of it or putting an end to it, then, there is no question but that the breach goes to the entire contract and but a single cause of action arises thereon to the party damaged. "Whether a contract

be single and entire or apportionable, if there is a total abandonment or breach by one party the other has a single cause of action upon the entire contract if he think proper to act upon the breach as a total one; the better opinion is that he is obliged to do so.'' [1 Sutherland on Damages (4 Ed.), p. 375.]

''In cases of contracts imposing a continuous duty or a duty the continued neglect of which is an uninterrupted breach, from which results a steady accretion of damage, the injured party may bring a succession of actions or treat defaults having that significance as a total breach, and recover damages accordingly.'' [Sutherland on Damages (4 Ed.), p. 415.]

The contract before us, particularly with reference to the character of the violation claimed, is different in character from that found in any case that has been brought to our attention. The contract in dispute is indefinite not only as to the work to be performed but as to the term it is to run. It is also negative, in a degree, in character because defendant did not undertake to furnish any agreed amount of work but merely promised that any day that work was available defendant would recognize plaintiff's seniority or his right of preference over others to work. It might be days, weeks or months before sufficient work would be available. However, the relationship created by the contract continued to be a relationship as long as the contract remained in force. [Yazoo v. Webb, 64 Fed. (2d) 902, 904.]

Defendant did not terminate the contract and plaintiff was not required to treat it as having been terminated. The posting of an altered seniority list by defendant was no more than refusal by defendant to recognize plaintiff's rights so long as the list existed, which might have been changed at any time. Plaintiff, still being in defendant's employ, was not required to seek work elsewhere, but could hold himself in readiness for work at defendant's call.

It is difficult to see how all the damages growing out of the breaches of the contract affecting plaintiff's seniority could have been included in the first suit. The failure of defendant to call plaintiff to work in accordance with the contract was not a total breach of the contract, putting an end to it, so that plaintiff could have sued for the whole damages suffered by him at the time he brought the first suit. As before stated, the contract was still in existence and we are of the opinion that each day that defendant failed to call plaintiff in accordance with its provisions was a separate violation of its terms and gives rise to a distinct cause of action; that there was a continuing breach of the negative covenant in the contract not to call other employees in violation of plaintiff's seniority rights and gave rise to a new cause of action and a new injury was inflicted for which a new action might be brought. [Menges v. Milton Piano Co., 96 Mo. App. 611; Fitzgerals v. Fed. Trust Co., 187 S. W. 600.]

If, when the former action was filed, plaintiff had, instead of bringing it for damages suffered by him up until the time of its filing, had brought one to recover the entire damages he had sustained, both past and prospective, as defendant contends he should have, there could have been no way of determining plaintiff's measure of damages. The contract was uncertain as to the time of its running. It was also uncertain as to the amount of work plaintiff would be called upon to do and, consequently, the method of ascertaining the damages, where a servant is discharged, would not be applicable to such a case. The amount of damages sustained where a servant is wrongfully discharged is *prima facie* the amount of damages for the full term. [Howard v. Daly, 61 N. Y. 362.] It is quite apparent that no such method of ascertaining damages in the case at bar could have been used had plaintiff brought the kind of a suit defendant says he should have brought. It is not a question of the prospective damages being uncertain and difficult of ascertainment but the impossibility of applying any such measure of damages in an action upon a contract of this kind. So it seems apparent that had plaintiff brought that kind of·a suit there would have been no basis for ascertaining the amount of his damages. The only practical method by which they could be recovered was for him to bring successive actions for his damages after they accrued.

Plaintiff could not have waited until the end of the term for which he was employed to bring the suit because the term is indefinite and might never be ended during the course of his lifetime.

Defendant says that to permit plaintiff to recover in this suit would be giving recognition to the abandoned doctrine of constructive service. It is true that this doctrine is no longer generally recognized in this country, and is not in force in Missouri. The reason for its disapproval is well stated in Howard v. Daly, supra, 1. c. 373:

"This doctrine is, however, so opposed to principle, so clearly hostile to the great mass of the authorities, and so wholly irreconcilable to that great and beneficent rule of law, that a person *discharged* from service must not remain idle, but must accept employment elsewhere if offered, that we cannot accept it. If a person *discharged* from service may recover wages, or treat the contract as still subsisting, then he must remain idle in order to be always ready to perform the service. How absurd it would be that one rule of law should call upon him to accept other employment, while another rule required him to remain idle in order that he may recover full wages. The doctrine of 'constructive service' is not only at war with principle, but with the rules of political economy, as it encourages service, equal to those who perform with willing hands their stipulated amount of labor. (Italics ours.)

As before stated, plaintiff was not discharged. Comsequently, no

cause of action accrued to him until after work was available and defendant refused to call plaintiff. The breaches were continuing in their nature. He was, therefore, not required to seek employment elseswhere but could have held himself in readiness, as he did, for call to work by defendant.

We have examined the cases cited by defendant and find them not in point.

However, defendant insists that the reply does not deny the allegation in the answer that plaintiff had not been employed by the defendant since December 15, 1933, and, therefore, that allegation must be taken as confessed. This question comes up on the sustaining of the motion for judgment on the pleadings and such motions are not looked upon with favor by the courts. Every reasonable intendment must be taken in favor of the plaintiff under such circumstances. [49 C. J., pp. 666, 667.] While, the reply does not, in terms, deny that plaintiff had not been employed by the defendant since December 15th, 1933, the petition expressly alleges that plaintiff was in the employ of the defendant and the reply alleges that the contract was a continuing one, requiring defendant to call plaintiff to work in the order of his seniority each and every day while said contract remained in force and effect, and that the action was one for damages for failure on the part of defendant to provide plaintiff the right and opportunity to work in the order of his seniority, as provided in said contract. Plainly, on its face, the reply shows that plaintiff was contending that the contract was in force and effect and that there was a continuing breach of it on defendant's part by its failure to call plaintiff to work in accordance with its terms, at the time of the filing of this suit. No other inference could be drawn from the allegations of the reply except that plaintiff was still in defendant's employ at the time of the filing of the suit.

From what we have said the judgment should be reversed and the cause remanded, and it is so ordered. All concur.